MAGEE et al. v. SNELL et al.    (No. 8312.)

(Court of Civil Appeals of Texas. Ft. Worth. March 25, 1916. On Rehearing, June 9, 1917.)

1. JURY ⚖➡25(6)—TRIAL BY JURY—DEMAND—SUBSTITUTED JUDGE.

Where the regular judge was disqualified, the substitute judge who presided after the first day of the term had power to grant an application to have the case placed on the jury docket, and where the parties failed to present such application, a subsequent demand for a jury trial came too late, under Rev. St. arts. 5175 and 5180, providing that the party desiring a jury trial shall make application on the first day of the term.

2. MORTGAGES ⚖➡295(1)—TRANSFER OF PROPERTY—MERGER.

The owner of land borrowed money giving notes secured by a trust deed on the entire tract. Later he sold a part of the tract to one from whom plaintiff purchased, and thereafter plaintiff secured an assignment of the notes and trust deed. Held, in a foreclosure suit by plaintiff, that his purchase of the notes did not extinguish them in favor of defendants, who purchased tracts subsequently.

On Rehearing.

3. MORTGAGES ⚖➡290—FORECLOSURE—TRANSFER OF MORTGAGED PROPERTY—INVERSE ORDER OF ALIENATION.

M. borrowed money giving his notes secured by a trust deed duly recorded on a tract of land. Thereafter M. sold parts of the tract to different persons including L. and J. The sale to J. was prior to the date of the purchase of L. L. paid cash for his tract, while J. executed vendor's lien notes which were hypothecated by M. to the bank, which later became the owner of the notes before maturity. By regular chain title, the J. tract passed to P., who reconveyed to M. by deed reciting cancellation of the J.

notes; but the bank did not consent to cancellation of the notes nor surrender them. M. was adjudged a bankrupt, and at a bankruptcy sale the bank purchased all title and right of M. to the J. tract subject to all liens existing. The assignee of the trust deed proceeded to foreclose it. Held, that the question whether the L. tract should be first subject to the payment of the trust deed before resort to the J. tract, now held by the bank, should be governed by the rules applicable to innocent purchasers and lienholders on real estate, which involved the registration statutes, rather than by the laws protecting innocent purchasers of promissory notes not secured by such liens, and if the sale of the tract to L. occurred prior to the hypothecation of the J. notes to the bank, or if at the time of such purchase L. had neither actual nor constructive notice of such hypothecation, then the interest of the bank should be sold for the purpose of satisfying the trust deed debt before resort to the L. tract, and the same reasoning applied to other purchasers.

Appeal from District Court, Nolan County; Royall G. Smith, Special Judge.

Suit by J. H. Snell and others against Mrs. Berta Magee, T. R. and J. W. Rhodes, and others. From a part of the decree entered, Mrs. Magee and children, and the Rhodes, appeal. Reversed and remanded.

B. A. Cox, Bruce E. Oliver, and Eugene De Bogory, all of Abilene, for appellants. Beall & Douthit, of Sweetwater, and J. M. Wagstaff, of Abilene, for appellees.

DUNKLIN, J. On January 2, 1905, J. D. Magee borrowed $6,558.11 from the American Freehold Land & Mortgage Company of London, Limited, for which he executed his promissory notes and secured the same by a deed of trust upon a tract of land embracing approximately 1,600 acres, which deed of trust was duly recorded. Thereafter, J. D. Magee at different times sold portions of said tract to different persons. J. H. Snell, the assignee of said notes, and the owner by purchase of two of the tracts from the original vendees of Magee, instituted this suit against the owners of all other portions of the original tract to establish the mortgage lien and have the different tracts sold for satisfaction of his debt, according to the equities of all owners. From a judgment in his favor, the owners of two of the tracts sold by J. D. Magee have appealed; the owners of one of the tracts being Mrs. Berta Magee and her minor children, heirs of L. V. Magee, deceased husband of Mrs. Berta Magee and father of said minor children, who purchased one of the tracts from J. D. Magee; and the owners of the other tract being T. R. and J. W. Rhodes. The case was tried before the court without the aid of a jury, and the findings of fact and conclusions of law filed by the trial judge appear in the record.

On November 19, 1913, J. D. Magee was adjudged a bankrupt in the federal court, later duly receiving his discharge in bank-

ruptcy. The foreclosure decreed by the court was, first, upon 115 acres of land which J. D. Magee had never sold, and upon the remainder of the tracts in the inverse order of their alienation by J. D. Magee.

Two tracts aggregating approximately 250 acres of land were sold by J. D. Magee to T. C. Jenkins prior to the date of the purchase by L. V. Magee of his tract of 160 acres. As a part of the purchase money of said conveyance, Jenkins executed to Magee vendor's lien notes which have never been paid, and upon which was due at the date of the trial the sum of $14,000. These notes were hypothecated to the Citizens' National Bank of Abilene by J. D. Magee as collateral security for indebtedness he owed to the bank, and later the bank became the owner of said notes before their maturity.

By regular chain of conveyances, the title of T. C. Jenkins in said two tracts passed to J. J. Patterson, who reconveyed the same to J. D. Magee by deed, which recited the cancellation of said Jenkins' notes, then held by the Citizens' National Bank of Abilene; but the bank did not consent to such cancellation, nor did it surrender said notes. At a sale by the trustee in bankruptcy of J. D. Magee, the bank also purchased all right, title, and interest of J. D. Magee in the two Jenkins tracts, subject to all liens existing thereon. At the time of the trial, the amount due on said notes so held by the bank exceeded the value of the said two Jenkins tracts of land. The court further found that, for the tract of 160 acres so purchased by L. V. Magee, the purchaser paid a cash consideration of $1,600, and that the deed received by him from J. D. Magee contained the usual warranties of title and was duly recorded. L. V. Magee died intestate, leaving his said wife, Mrs. Berta Magee, and said minor children as his only heirs.

By their first assignment, appellants Mrs. Berta Magee and her minor children insist that the court erred in decreeing that the tract owned by them should be sold and the proceeds applied to plaintiff's debt prior to the sale under foreclosure of the two Jenkins tracts mentioned above and owned and claimed by the bank. Appellants do not question the principles of the equitable rule of subjecting different tracts of land to the satisfaction of a blanket lien in the inverse order of their alienation, but insist that under such rule the Jenkins tract should have been resorted to before recourse to their tract, in view of the fact that the Jenkins title was reacquired by J. D. Magee after the purchase of their tract, and the bank later acquired that title from J. D. Magee. As shown by the findings noted already, the title acquired by the bank to the two Jenkins tracts at the trustee's sale was an equity only, and was subject to all prior outstanding liens, one of which was the vendor's lien to secure the purchase-money notes held by the bank. As these notes amounted to more than the value of the land, the interest purchased by the bank at such trustee's sale was but a shadow only, and constituted no substantial interest in the land. The vendor's lien notes then held by the bank, which were acquired before maturity, constituted the real interest of the bank in those two tracts, and all rights and interest evidenced by them originated prior to the purchase by L. V. Magee. The rule applied by the trial judge in the foreclosure is founded upon broad, equitable principle, the reasons and foundation of which would apply in favor of the holder of those notes the same as it would have applied in favor of Jenkins, had he paid a cash consideration for the tract so purchased by him and had owned them at the time of the suit. Accordingly, we overrule the assignment of error now under discussion.

The court further found that L. V. Magee, during his lifetime, and his widow and children since his death, occupied, used, and claimed the tract purchased by himself as their homestead. Appellants insist that the facts so found, considered in connection with the further facts that L. V. Magee was claiming the land under a deed with warranty of title, reciting a cash consideration and duly recorded, were sufficient to put the bank upon notice of a parol contract on the part of J. D. Magee with L. V. Magee, at the time of such purchase, that the vendor would protect that tract from the blanket lien, as testified to by J. D. Magee upon the trial, but upon which issue the court made no finding. We are cited to no registration statute, nor decision, which would charge the bank with such notice, even if it could be said that such testimony of Magee conclusively established such agreement; and we are unable to perceive upon what principle of equity a prior right could be impaired and perhaps destroyed in that manner. As said before, if Jenkins had paid a full consideration for his two tracts, clearly he would be entitled to invoke the equitable rule applied by the trial court. By the purchase of the vendor's lien notes before their maturity, the bank certainly acquired at least a part of the interest which Jenkins would have acquired had he paid cash for the land, and we fail to see any reason why the bank should not, therefore, have an equal claim with Jenkins for protection.

We are of the opinion that the evidence was sufficient to sustain the court's findings that the bank did not consent to a surrender and cancellation of the vendor's lien notes held by it when Patterson reconveyed the land to J. D. Magee, contrary to the contention made by another assignment.

For the reasons given above, the assign-

ments of error of appellants Mrs. Berta Magee and her minor children are overruled.

[1] Appellants T. R. and J. W. Rhodes by their first assignment insist that the court erred in refusing their demand for a trial of the case by a jury. As shown by the bill of exception, upon which that assignment is predicated, the regular judge of the district court in which this suit was instituted and tried was disqualified to try it. The citation to the defendants was returnable to the November term, 1914, of the district court of Nolan county, at which term these appellants filed answers in the case. By reason of his disqualification, Hon. W. W. Beal, the regular judge of that court, exchanged districts with Hon. C. F. Spencer, judge of another district, and the judge last named held said court for one week during the November term, 1914, at which time a regular jury was present. During that week, these appellants made no demand for a jury, and, as this case was not reached for trial, it went over to the March term, 1915. During that term Judge Spencer again presided in that court for one week, with a jury duly impaneled; but the present suit was not reached for trial, neither did these appellants make any demand that the case be placed on the jury docket, while he so presided. Both of said exchanges of districts by the two judges were made for the purpose of trying the cases on the docket in that court in which the regular judge Hon. W. W. Beal was disqualified.

At a later date during the March term, 1915, of the district court, Hon. Royall G. Smith was duly elected as a special judge, and presided over said court for the purpose of trying the cases pending in that court in which the regular judge was disqualified. This case was then called for trial, and after announcement of ready for trial by plaintiff, and after demurrers and pleas filed by defendants T. R. and J. W. Rhodes to the venue had been presented and overruled, those defendants then for the first time demanded a trial by jury, which demand was refused. At the time of such demand there was no jury in attendance upon court; the jury impaneled for the week having been discharged on the preceding day by the regular judge of the court. By articles 5175 and 5180 of our Statutes, it is provided that any party desiring a jury trial shall make application therefor in open court and pay the jury fee on the first day of the term of court at which the case is to be tried, unless the case is an appearance case, and in that event on appearance day. Appellants insist that as the regular judge was presiding on the dates contemplated by those statutes, and as he was disqualified to try the case, he was also disqualified to entertain the application that the case be placed on the jury docket, and that, under such circumstances, the demand made for a jury when the case was finally called for trial should have been granted.

Under the decisions of our Supreme Court, there is no doubt that Judge Spencer could properly have granted an application for the case to be placed on the jury docket at any time during the two preceding weeks of court when he presided, one of which was during the November term, 1914, and the other during the March term, 1915, as noted above. And in view of appellant's failure to then present an application for trial by jury, and the other facts and circumstances related, we are of opinion that their demand for a jury came too late, and that there was no error in refusing it. City Loan & Trust Co. v. Sterner, 124 S. W. 207, and decisions therein cited.

[2] As shown by further findings by the trial judge, two other tracts of the land were sold by J. D. Magee prior to the sale to L. V. Magee and T. R. and J. W. Rhodes, one of which sales was made to J. McCoy and the other to Robert A. Linn. Thereafter Snell purchased those tracts, and, from his testimony shown in the statement of facts, it appears that this purchase antedated his purchase of the mortgage lien notes upon which he instituted this suit, and that he bought those notes in order to protect the land so purchased by him, although those facts are not included in the court's findings of fact, nor was there any request for a finding of the same by the court. In view of that testimony in connection with the court's finding that plaintiff purchased those two tracts and owned them at the date of trial, appellants insist that the notes were in reality paid off and extinguished, and that plaintiff's only cause of action against appellants and the other defendants was for contribution. It is further insisted that in allowing contribution the interest chargeable to defendants should be at the legal rate, rather than the contract rate specified in said notes, which was allowed, and that under the doctrine of contribution plaintiff could not recover the 10 per cent. attorney's fees, provided for in the notes and likewise included in the judgment.

Those contentions are presented by two assignments, in one of which complaint is made of the excessiveness of the judgment by reason of the facts just stated, and the other is addressed to the action of the court in overruling a special exception to plaintiff's petition challenging the right asserted therein to recover the attorney's fees stipulated in the notes. The petition contained no allegation that those notes had been discharged; on the contrary, it contained specific allegations of ownership of the notes by transfer from the original payee. And no assignment is addressed specifically to the finding that plain-

tiff was the owner and holder of the notes by such transfer.

In the absence of any findings or evidence to show that it was the intention of plaintiff and J. D. Magee that the transaction between them should operate to extinguish the notes, we fail to perceive upon any principle of equity any reason for holding that the same necessarily had that effect; especially, as such transaction did not operate injuriously to subsequent purchasers of the smaller tracts. While the notes were in the hands of J. D. Magee, clearly the contentions last suggested were not available against him, and we perceive no reason why plaintiff did not acquire all his rights by the purchase of the notes.

Another assignment presented by these appellants, T. R. and J. W. Rhodes, that the two tracts sold by J. D. Magee to T. C. Jenkins and afterwards sold by the trustee in bankruptcy to the Citizens' National Bank of Abilene should have been subjected to payment of plaintiff's debt before recourse had to the lands owned by the Rhodes, is overruled for the same reason given by us in the disposition of substantially the same assignment presented by appellants Mrs. Berta Magee and her minor children.

For the reasons noted, the judgment rendered against the appellants mentioned above is affirmed; in all other respects, the judgment is undisturbed, no appeal therefrom having been prosecuted.

## On Rehearing.

In 3 Jones on Mortgages (7th Ed.) § 1620, the reason for the equity rule that the foreclosure on several tracts all covered by the same mortgage in the inverse order of their alienation is stated as follows:

"This order of equity proceeds upon the supposition that each subsequent purchaser has actual or constructive notice, by the record of the deed or otherwise, of each prior conveyance, by the mortgagor of portions of the premises."

In Moran v. Wheeler, 87 Tex. 179, 27 S. W. 54, the following was said:

"It is the policy of the law to require that all matters affecting the title to lands should be placed upon the public records, so that one who seeks to purchase it may safely judge of the validity of the title. When a purchaser who seeks to buy land has examined the records of titles, and finds nothing to indicate that there is an adverse claim, and he is not in possession of any facts that would put him upon inquiry as to any matter not of record, he has the right to presume that any person claiming an adverse right would have placed the same upon record, and that there is none."

In that case it was held that it was within the power of the assignee of a vendor's lien note to take a written assignment of the vendor's lien and to place it upon record, and that, in the absence of such a record, a subsequent mortgagee of the land took a lien superior to the vendor's lien where the deed records showed that the vendor in whose favor the note was made had executed a release of such lien. To the same effect is Mansur Tebbetts Imp. Co. v. Beer, 19 Tex. Civ. App. 311, 45 S. W. 972; Lubbock State Bank v. Wooten Gro. Co., 179 S. W. 1141; Biswell v. Gladney, 182 S. W. 1168.

[3] The vendor's lien reserved by J. D. Magee to secure the payment of the purchase-money notes for the Jenkins tract passed to the Citizens' National Bank of Abilene as an incident to those notes; but there was no transfer of record indicating that transaction, while the deeds from J. D. Magee to L. V. Magee and also to T. R. and J. W. Rhodes were duly recorded.

Whether or not the transaction between J. D. Magee and the bank, by virtue of which the bank took the Jenkins notes as collateral security for money owing to it by J. D. Magee, antedated the sale by J. D. Magee to L. V. Magee, or the sale to T. R. and J. W. Rhodes, does not appear in the court's findings of fact; nor is the evidence shown in the statement of facts by any means clear upon those issues, which seem to have been treated by the court as immaterial in view of the fact that the Jenkins notes were hypothecated to the bank before their maturity and for valuable consideration. And upon our original consideration of the case we were of the same opinion, but, after a more mature consideration, we have reached the conclusion that the question whether or not either the L. V. Magee tract or the T. R. and J. W. Rhodes tract should be subjected to the payment of plaintiff's mortgage debt before resort had to the Jenkins tract, upon which the bank has a lien, should be governed by the rules applicable to innocent purchasers of, and lienholders on, real estate, which involve our registration statutes rather than by the law protecting innocent purchasers of promissory notes not secured by such liens.

If the sale of the L. V. Magee tract occurred prior to the hypothecation of the Jenkins notes to the bank, or if at the time of such purchase L. V. Magee had neither actual nor constructive notice of such hypothecation, then we are of the opinion that the interest of the bank in the Jenkins tract should be sold for the purpose of satisfying plaintiff's debt before resort to the Magee tract, and the same conclusion applies to the tract sold to T. R. and J. W. Rhodes. When J. D. Magee sold the Jenkins tract, the superior title as well as the vendor's lien was retained by him. Such lien, considered separate and apart from the superior title, was an interest in the land itself, and, if J. D. Magee had never parted with it, clearly the owners of all tracts sold by him could have claimed that it should be subjected to the payment of plaintiff's debt before recourse to any of those tracts. The bank, which now

owns that lien, stands in his shoes, with no greater rights with respect to the owners of the Magee tract and of the tract sold to T. R. and J. W. Rhodes, except such as may result from the law applicable in case of the purchase of an interest in the land or the acquisition of a lien thereon.

For the reasons noted, the motions of appellants for rehearing are granted, the judgment of the trial court as between the bank and appellants is reversed, and the cause is remanded for a new trial of all issues between those parties. The judgment as between the other parties to the suit, of which no complaint is made here, is undisturbed, and upon another trial the court will render the same judgment as between them as was rendered before, to the end that there shall be but one final judgment; it appearing that, whatever may be the judgment as between the bank and appellants, the final results to the other parties will be the same.